HENRY A. GARDNER v. MINNEAPOLIS & ST. LOUIS RAILWAY
COMPANY and Others.

August 12, 1898.

Nos. 11,199—(249).

**Minneapolis & St. Louis Ry. Co.—Liability of Stockholders.**
> The Minneapolis & St. Louis Railway Company was not the same
> corporation that was created by the territorial act of 1853 entitled "An
> act to incorporate the Minnesota Western Railroad Company," but a new
> corporation, created and organized under Sp. Laws 1881, c. 113; and
> hence the stockholders were subject to the personal liability imposed by
> Const. art. 10, § 3.

**Sp. Laws 1881, c. 113—Constitution—Estoppel of Stockholders.**
> Having accepted the benefits of the act of 1881, by organizing, issu-
> ing stock and doing business as a corporation under it, the stockholders
> are estopped from asserting the unconstitutionality of the act.

Action in the district court for Hennepin county by plaintiff, as
a judgment creditor of the Minneapolis & St. Louis Railway Com-
pany, to enforce the double liability of the stockholders in that
company. The cause was submitted to Belden, J., on an agreed
statement of facts, and judgment was ordered in favor of plaintiff.
Defendants' motion for a new trial was denied, Smith, Elliott,
Simpson, JJ. From a judgment against defendants entered in pur-
suance of the order of Belden, J., the answering defendants ap-
pealed. Affirmed.

The Minneapolis & St. Louis Railway Company was a consoli-
dated company composed of: (1) The Minneapolis & St. Louis Rail-
way Company; (2) The Minneapolis & Duluth Railroad Company; (3)
The Minnesota & Iowa Southern Railroad Company; and (4) The
Fort Dodge & Fort Ridgely Railroad Company. The Minneapolis &
St. Louis Railway Company and the Minneapolis & Duluth Rail-
road Company are the same corporation, organized under the same
charter, constituting the same line, the Minneapolis & Duluth com-
pany being a part of the St. Louis company. The Minnesota &
Iowa Southern Railroad Company and the Fort Dodge & Fort
Ridgely Railroad Company were both Iowa corporations. Under

the charter of the constituent company the Minneapolis & St. Louis Railway Company its stockholders were not liable for corporate debts. Under the constitution and laws of Iowa the stockholders of the Iowa corporations were not liable for corporate debts. This exemption was expressly incorporated in the charters of the respective companies.

*Albert E. Clarke* and *Wilbur F. Booth,* for appellants.

As the private property of stockholders in each and all of the constituent companies was exempt from corporate debts, such exemption was passed to and was continued to the stockholders of the consolidated corporation, not only by general law, but by the express language of the act which enabled them to consolidate and by the general statutes of the state. Laws 1858, c. 70, p. 166; P. S. 1858, c. 7, pp. 323, 324; G. S. 1866, c. 34, p. 269; G. S. 1878, c. 34, §§ 66-68. It was also preserved by the saving clause of the constitution. Const. art. 15, § 1, Schedule. The rule for which we contend was affirmed by the supreme court of the United States in Chesapeake & O. R. Co. v. Virginia, 94 U. S. 718, 726; Green Co. v. Conness, 109 U. S. 104; County of Scotland v. Thomas, 94 U. S. 682; Tennessee v. Whitworth, 117 U. S. 139. The same principle is recognized in First Div. St. P. & P. R. Co. v. Parcher, 14 Minn. 224 (297); East Tenn., V. & G. R. Co. v. Pickerd, 24 Fed. 614; Buchanan v. Knoxville & O. R. Co., 71 Fed. 324; State v. Winona & St. P. R. Co., 21 Minn. 315. The legislative intent to preserve the franchises and immunitites of each of the constituent companies to the consolidated company is clearly expressed. Sp. Laws 1881, c. 113, §§ 12-14.

Plaintiff by his reply claims that the act of 1881 created a new corporation. If this were true, the act would be absolutely void, because the constitution expressly prohibits the creation of corporations by special act of the legislature. The act does not assume to create any new franchises, but simply to transmit and continue old ones. The right of the legislature to amend the charter of corporations created by special act, and to confer upon such corporations special powers and privileges, has been recognized by the supreme court, and under these decisions the act of 1881

is valid as an amendment, if treated as an amendment to the original charter. First Div. St. P. & P. R. Co. v. Parcher, supra; Ames v. Lake Superior & M. R. Co., 21 Minn. 241; Cotton v. Mississippi & R. R. Boom Co., 22 Minn. 372; City of St. Paul v. St. Paul & S. C. R. Co., 23 Minn. 474; Green v. Knife Falls Boom Corp., 35 Minn. 155. And see Farnsworth v. Lime Rock, 83 Me. 440; St. Joseph v. Shambaugh, 106 Mo. 559.

If the legal effect of the consolidation is to create a new corporation, then the act of 1881 authorizing the consolidation is in violation of the constitutional provision prohibiting the formation of corporations by special laws. In such a case there has never been a consolidated company. If the consolidated company had no legal existence, there can be no liability of stockholders. Potter's Dwar. St. 367; 1 Spelling, Corp. § 72; Brown v. Dibble, 65 Mich. 520; Huff v. Winona & St. P. R. Co., 11 Minn. 114 (180). The rule that a supposed corporation and its members are estopped to deny its corporate existence is confined to cases of de facto corporations, and there can be no de facto corporation where there is no law authorizing the corporation, and consequently no estoppel. 1 Thompson, Corp. §§ 522, 523; Heaston v. Cincinnati, 16 Ind. 275; Snyder v. Studebaker, 19 Ind. 462.

*F. W. M. Cutcheon,* for respondent.

The defendant railway company is a corporation of the state of Minnesota organized subsequently to the adoption of the state constitution. Its shareholders are therefore subject to the constitutional double liability. That the question whether the consolidated company is to be regarded as a new corporation must be determined by reference to the intention of the legislature, as expressed in the consolidation act, is perfectly true; but the intent that consolidation should be made, if at all, through the agency of a new company, is too plain to admit of serious dispute. For statements of the rule and examples of less extreme cases, see Huff v. Winona & St. P. R. Co., 11 Minn. 114 (180); Fitz v. Minnesota C. R. Co., 11 Minn. 304 (414); Ames v. Lake Superior & M. R. Co., 21 Minn. 241.

Moreover, defendant shareholders are estopped to claim, as

against a creditor of the company which has assumed to act as a corporation, and of which they have been shareholders, that such company is not a corporation, even if they justify the claim upon the ground that the law under which the company is organized is unconstitutional. See 2 Morawetz, Priv. Corp. §§ 759, 760; 2 Thompson, Corp. §§ 1853, 1855; 19 Am. & Eng. Corp. Cas. 298, note; McCarthy v. Lavasche, 89 Ill. 270; Dows v. Naper, 91 Ill. 44; Weinman v. Wilkinsburg, 118 Pa. St. 192; Board v. Shields, 62 Mo. 247; Minnesota G. L. E. Co. v. Denslow, 46 Minn. 171; Augir v. Ryan, 63 Minn. 373.

Defendant company unquestionably falls within the definition of a de facto corporation as laid down by this court. Minnesota G. L. E. Co. v. Denslow, supra; Foster v. Moulton, 35 Minn. 458; Finnegan v. Noerenberg, 52 Minn. 239; Hause v. Mannheimer, 67 Minn. 194.

BUCK, J.

One of the defendants, the Minneapolis & St. Louis Railway Company, is a domestic railroad corporation, and located within this state, and is insolvent. The defendants who answered are William L. Bull, Richard B. Hartshorne, Edwin Hawley and William Strauss. The plaintiff, Gardner, brought the action, in behalf of himself and other creditors who might intervene, against the defendants for the purpose of enforcing an alleged double liability on the part of certain stockholders, individual defendants abovenamed, and on March 23, 1898, obtained a judgment in the district court of Hennepin county in his favor, and against the abovenamed answering defendants, for the sum of $14,987.95. The facts were all stipulated, and the appeal is from the judgment.

It appears from the record that during the year 1853 the Minnesota Western Railroad Company was incorporated by an act of the legislature of the territory of Minnesota entitled "An act to incorporate the Minnesota Western Railroad Company," approved March 3, 1853,[1] which railroad company continued to be known by said name until on or about May 26, 1870, when its board of directors, under authority conferred upon it by an act of the legislature approved February 4, 1870,[2] lawfully changed the name of

[1] Laws 1853, c. 10.          [2] Sp. Laws 1870, c. 57.

the corporation to the Minneapolis & St. Louis Railway Company, by which name it was thereafter commonly known.

On or about April 20, 1881, said corporation, proceeding under and in accordance with the provisions of another act of the legislature of the state of Minnesota approved March 2, 1881,[3] and entitled "An act to amend an act entitled 'An act to amend an act entitled an act to incorporate the Minnesota Western Railroad Company, approved March third (3d), one thousand eight hundred and fifty-three (1853), and the acts amendatory thereof,' approved February fourth (4th) eighteen hundred and seventy (1870)," did duly enter into an agreement with certain other corporations, to wit, the Minneapolis & Duluth Railroad Company, the Minnesota & Iowa Southern Railroad Company and the Fort Dodge & Fort Ridgely Railroad Company, by and under the terms of which all said corporations above mentioned agreed to make a full and complete consolidation and amalgamation of all said corporations, and their respective stocks, franchises, property, earnings and management, in accordance with the provisions of said act of March 2, 1881, under the name of the Minneapolis & St. Louis Railway Company, which said agreement was to and did take effect June 1, 1881. Thereafter said companies filed their said articles of consolidation as provided by said act of the legislature of Minnesota of March 2, 1881, and on or about said June 1, 1881, said consolidation was duly consummated, each of said constituent companies in form conveying and transferring unto said consolidated corporation their respective stocks, franchises, rights, property and earnings, in accordance with the provisions of said act of March 2, 1881.

Thereafter said consolidated company entered upon, and ever after until November 2, 1894, enjoyed, the franchises, rights, property and earnings of its said constituent corporations conveyed as aforesaid. Said consolidated corporation is the defendant corporation, the Minneapolis & St. Louis Railway Company, above named. Said defendant corporation, the Minneapolis & St. Louis Railway Company, was invested, by said acts above mentioned and the laws and statutes of said territory and state of Minnesota, with the

[3] Sp. Laws 1881, c. 113.

usual and general powers of a body incorporate, and especially was empowered to construct, maintain and operate a railroad, with a single or double track, from Stillwater, on Lake St. Croix, to the City of St. Anthony, on the Mississippi river, both in Minnesota, and thence across said river to the city of Minneapolis, in said state, to a convenient point of junction with the Mississippi Valley Railroad, or the Hastings & Dakota Railroad, or both, besides eight branches.

On and prior to June 28, 1888, said defendant the Minneapolis and St. Louis Railway Company owned and operated a system of railroads in the states of Minnesota and Iowa, extending from Minneapolis, through Hopkins, Merriam Junction, and Albert Lea, Minnesota, and Fort Dodge, Iowa, to Angus, in the state of Iowa, with a branch line from Hopkins via Winthrop to Morton, Minnesota. Said railway company also owned a line of railway extending from Minneapolis to White Bear, in the state of Minnesota, which was leased to, and operated by, the St. Paul & Duluth Railroad Company. On said day last mentioned said defendant railway executed three mortgages, one of which was the improvement and equipment mortgage mentioned below, securing bonds theretofore issued, and varying in amount, which said mortgages, and six others, were liens upon different portions of said lines of railway. The mortgages amounted in the aggregate to several millions of dollars, and, in addition to said mortgages above described and mentioned, there existed upon said June 28, 1888, a number of contracts of various kinds, to wit, construction contracts, traffic agreements, trackage agreements, leases, etc., which upon said day constituted liens upon the lines of said defendant the Minneapolis & St. Louis Railway Company.

Subsequently this railroad became insolvent, and a receiver thereof was duly appointed on June 28, 1888, who took possession of all the property, railway, franchises, rights and estates of said railroad company. The foreclosure proceedings against said company which had previously been commenced were continued, and thereafter such proceedings were had therein that on June 29, 1893, an interlocutory decree was entered in said action, whereby it was ordered and decreed that said improvement and equipment mort-

mortgage was then a lien, but none other, should be sold at judicial rights and estates upon which said improvement and equipment sale, at the time and in the manner therein provided, in case no gage be foreclosed, and that all the property, railway, franchises, redemption thereof should be made as therein provided.

No redemption of said property, railway, franchises, rights or estates having been made as in said decree provided, all said property, railway, rights, franchises and estates upon which said improvement and equipment mortgage was a lien or charge, but none other, were, under and in accordance with the provisions of said interlocutory decree, offered for sale upon October 11, 1894, and then and there sold by the sheriff of Hennepin county to F. P. Olcott, as chairman of a committee organized to purchase said property, and thereupon a certificate of such sale was duly executed and delivered by said sheriff to said Olcott, as such chairman. Thereafter, and upon October 31, 1894, said sale was duly confirmed by said court, and a final decree duly entered in said foreclosure action, adjudging the title to the railway, property, franchises, rights and estates so sold to be in the assignees of said Olcott, purchaser at said foreclosure sale. In said foreclosure action all amounts due upon any and all the bonds and coupons secured by said improvement and equipment mortgage, and all indebtedness secured thereby, were fully paid and satisfied.

Immediately after said foreclosure sale said F. P. Olcott, as chairman of said committee of purchasers, sold and assigned to divers persons said certificate of sale, and all rights, title and interest thereunder or by virtue of said sale arising, and his said assignees, pursuant to the statutes of the state of Minnesota in such case provided, did, on or about November 2, 1894, organize and incorporate a railway company called the Minneapolis & St. Louis Railroad Company, which said Minneapolis & St. Louis Railroad Company thereupon, as successor of said Minneapolis & St. Louis Railway Company, became invested with all the property, railway, franchises, rights, privileges, immunities and estates embraced in said improvement and equipment mortgage, and sold as aforesaid, and, as such successor to said Minneapolis & St. Louis Railway Company, entered into and has ever since remained in possession of,

operating and enjoying, all said property, rights, franchises and estates.

On December 27, 1887, one Revilo F. Parshall, who was a citizen and resident of the state of Illinois, and never was a citizen of the state of Minnesota, in an action then pending in the circuit court of the United States for the district of Minnesota for personal injuries suffered by him in consequence of the negligence of said railway company, viz., the Minneapolis & St. Louis Railway Company, secured a judgment against said company for the sum of $8,719.10, which judgment was duly assigned to this plaintiff, who is the owner thereof, and the same is unpaid and in full force and effect. Said plaintiff has never been a resident of the state of Minnesota. By reason of a stay of execution and the appointment of a receiver of said railway company, and its insolvency, plaintiff has been unable to realize on said execution.

Since the consolidation of said several railroad companies, under the name of the Minneapolis & St. Louis Railway Company, it has been acting as a company and transacting a general railroad business under that name. Between April 26, 1891, and November 2, 1894, the individual defendants held at least the number of shares in said defendant Minneapolis & St. Louis Railway Company next hereinafter set opposite their names, respectively, of the par value of $100 each, viz.: William L. Bull, 200 shares; Richard B. Hartshorne, 100 shares; William Strauss, 2,200 shares. And Edwin Hawley acquired 600 shares of his stock November 10, 1884, 100 shares February 4, 1885, 300 shares June 24, 1889, and 1,100 shares July 20, 1892.

Upon the facts in the record, it seems to us that there cannot be any serious question but that, under Sp. Laws 1881, c. 113, the several railroads herein mentioned were authorized to merge and consolidate their capital, franchises and property under the name of the Minneapolis & St. Louis Railway Company, and that, as a matter of fact, they did so, and acted accordingly for many years. They certainly had the legal sanction of the legislature, and the essential steps necessary to effect a consolidation were taken, and whether all or any of the corporations so consolidated then had a legal existence as such cannot be contested and determined in a

proceeding of this kind, but only in a direct proceeding instituted by the state. 1 Thompson, Corp.,§ 315. This consolidated company, duly organized as such, issued its stock and acted in the same manner as railroad companies created otherwise than by consolidation. Section 11 of the act provides that the new corporation shall possess all the powers, rights and franchises conferred upon each of its constituent corporations, and shall be subject to all the restrictions and duties imposed by the laws of this state. And section 14 of the act provides that

"All the provisions of the general laws of this state in regard to railroad corporations shall be applicable to any new corporation formed by consolidation under the provisions of this act, except so far as the same shall not be applicable thereto by reason of the situation of portions of its lines without this state."

Railroad franchises are derived from the state, and, where several have thus come into existence, it needs but little, if any, argument to show that the power which authorized their creation may authorize their consolidation. And a consolidation could not have been made without the consent of the shareholders. Having done this, the different branches were merged into a new corporation.

"A consolidation would involve the formation of a new company by the shareholders under a new constitution." 2 Morawetz, Priv. Corp. § 940. How can it be otherwise?

The various provisions of the several branches may be in sharp conflict, as was the case here between the exemption from double liability of the shareholders in the Iowa corporation and such liability under our constitution on the part of the Minnesota corporation. In consolidating, such corporation must necessarily yield some portions of its rights, and assume other rights, powers and obligations in the new one. The law authorizing the consolidation repeatedly refers to the corporation as a new one, and it was in this new one that the individual defendants took and held stock for which they are sued as being liable. There can be no doubt that the general effect of the consolidation of several corporations by the shareholders into one is to create a new one. Whatever may be the liability of the several corporations we need

not inquire, because the liability here sought to be enforced is one against individuals who have been and are stockholders in the new corporation. It is immaterial whether they owned stock in one or more of the several corporations. They are charged with this double liability because they are found to own stock when the judgment was recovered against the new corporation, or at a time previous to the rendition of such judgment, when such liability became fixed against them under the law.

Nor does the mere fact that the stockholders in the Iowa corporation possessed immunities or exemptions from double liability continue that exemption, if, upon coming into our state, it consolidated with a Minnesota corporation, because, by its voluntary act in becoming a member of a new corporation here, its rights therein would be measured by our laws, legislative and constitutional.

Assuming, therefore, that the Minneapolis & St. Louis Railway Company was a new consolidated railroad corporation, the double-liability clause of the constitution (article 10, § 3) would be applicable. Under this section, each stockholder in any corporation is liable to the amount of stock held or owned by him, excepting those organized for the purpose of carrying on any kind of manufacturing or mechanical business. This constitutional provision is very broad in its language, and includes each shareholder in any corporation except those specifically mentioned. A shareholder in a railroad corporation is not one of those exempted, but is included in the general language, viz. "each shareholder in any corporation." Nor is there any sound reason why this double liability should not attach to shareholders in a railroad corporation. They derive their franchises from the state, which gives them vast powers of a public nature, and which are frequently of great value to them, and a corresponding responsibility should attach to those carrying on the business authorized by such franchises.

Now, let us more particularly refer to the contention of the defendants' counsel, that if the special law of 1881, and the acts done thereunder, were attempts to create a new corporation, then they would be absolutely void, because the constitution (article 10, § 2) prohibits the formation of corporations under special acts except for municipal purposes. Suppose that the corporation was

never legally organized, and that steps might have been legally taken to have prevented its acting even as a de facto corporation; can the promoters of this scheme, who organized it, and have not only carried on its business as a de facto corporation, but claimed it to be one de jure, successfully enter the plea that the act of 1881 was unconstitutional, and hence all acts done under it are invalid?

Since its formation, in 1881, it has acted openly in all respects as a corporation. It has borrowed money, giving security therefor upon the property of the new corporation to the amount of millions of dollars, which it has presumably used for its own benefit. It has operated its road, carrying freight and passengers, and receiving large sums of money therefor. It made construction, traffic and trackage agreements, and various leases, and in all of these matters it participated in the benefits derived therefrom. To all of these things the stockholders are presumed to have consented, and to have had knowledge of such transactions, and enjoyed the fruits of them.

In the case of McCarty v. Lavasche, 89 Ill. 270, a suit was brought by a creditor of the corporation to enforce the individual liability of a shareholder for double the amount of his shares, and a defense was interposed that the act of the legislature under which the corporation had been formed was unconstitutional. But the supreme court held that the defendant was liable, saying that the appellant approved of the act and availed himself of its benefits by subscribing for stock, and, becoming entitled to exercise all the rights and privileges of a stockholder in the corporation, justice, morality, public policy and precedent all demand that the appellant should be estopped from denying the constitutionality of the law. In Michigan it was decided that a corporation which had not been properly organized under any existing law of that state could be sued upon a note which it had executed in its corporate name. Empire v. Stuart, 46 Mich. 482, 9 N. W. 527. See, also, Minnesota G. L. E. Co. v. Denslow, 46 Minn. 171, 48 N. W. 771.

And we are of the opinion that plaintiff, as a creditor of the defendant railroad company, is entitled to enforce the individual liability of the answering stockholders, and that the principle of

estoppel extends so far as to prevent them from setting up the invalidity of the charter as a defense.

Other questions have been raised and discussed by the respective counsel, but a decision upon them by this court in this action is entirely unnecessary, and we express no opinion thereon.

Judgment affirmed.